In re ELSCINT, LTD. SECURITIES
LITIGATION.

M.D.L. No. 675.
Civil A. No. 85–2622–K.

United States District Court,
D. Massachusetts.

June 19, 1987.

Eric L. Keisman, Wolf, Popper, Ross, Wolf & Jones, Joseph H. Weiss, Law Office of Joseph H. Weiss, Jules Brody, Stull, Stull & Brody, Edward A. Grossman, Bernstein, Litowitz, Berger & Grossman, Harvey Greenfield, Stephen T. Rodd, Abbey & Ellis, New York City, Thomas G. Shapiro, Shapiro & Grace, Boston, Mass., for plaintiffs.

Gerald F. Rath, Steven W. Hansen, Victor H. Polk, Jr., Bingham, Dana & Gould, Boston, Mass., for Robertson, Colman & Stephen Prudential-Bache Securities & Shears Lehman Brothers, Inc.

Jerome P. Facher, John J. Regan, Michael R. Heyison, Hale & Dorr, Boston, Mass., for Ernest & Whinney.

Thomas J. Dougherty, Lori Weiner–Lander, Skadden, Arps, Slate, Meagher & Flom, Boston, Mass., Jonathan J. Lerner, Dana H. Freyer, Skadden, Arps, Slate Meagher & Flom, New York City, for Somekh, Chaiken.

Joel Kozol, Matthew Kozol, Friedman & Atherton, Boston, Mass., for Avraham Suhami.

Daniel P. Levitt, Michael S. Oberman, Kramer Levin Nessen Kamin & Frankel, New York City, for Outside Directors; Elron; DIC; IDB.

Stephen R. Steinberg, Kimberlee S. Bogen, Reavis & McGrath, New York City, for Elscint Ltd., Benjamin Sabbah, Pinhas Lahat, Meir Dvir, Maurice Arenson.

Gordon T. Walker, Michael L. Blau, McDermott, Will & Emery, Boston, Mass., for Reavis & McGrath and Kramer, Levin.

## MEMORANDUM AND ORDER

KEETON, District Judge.

On December 31, 1986, this court issued two Memoranda and Orders in this case. One Memorandum and Order addressed issues related to plaintiffs' motion for class certification (Docket No. 91) ("Class Certification Memorandum"), and the other addressed issues related to defendants' motions to dismiss (Docket No. 92). These Memoranda and Orders expressed tentative conclusions and raised questions concerning various issues. The court expressly declined to state final conclusions or orders on any issue then pending, but instead scheduled hearings on the issues addressed and requested counsel to submit and argue their positions concerning the tentative conclusions and questions stated.

As requested, counsel filed various submissions addressing the issues raised in the Memoranda and Orders and additional issues presented by plaintiffs' motion for leave to intervene. A hearing was held on February 26, 1987, at which I took under advisement plaintiffs' motion for leave to intervene, defendants' motion requesting more detailed and specific findings and conclusions with respect to class certification, and the motions to dismiss of various indi-

vidual defendants, defendant control persons, defendant Ernst & Whinney, and defendant underwriters. Counsel were given leave to, and did, file additional submissions regarding these motions, which are now before the court for decision. This Memorandum addresses issues concerning claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Other issues will be addressed in a Memorandum to be issued separately.

## I.

On January 6, 1987, the same date on which the court's Memoranda and Orders of December 31, 1986 were served on counsel, plaintiffs filed a motion for leave to intervene on behalf of Dr. and Mrs. Maynard L. Freeman, in both their individual capacities and on behalf of all purchasers of Elscint stock on the January 18, 1983 public offering. Unlike the original plaintiffs in this action, the proposed intervenors are alleged to have purchased shares of Elscint common stock on the public offering, and therefore can readily "trace" their shares to the prospectus at issue, as is required for their claims under Section 11.

## A.

Plaintiffs contend that the proposed intervention would moot the court's tentative conclusion that class certification would not be appropriate on plaintiffs' Section 11 claims because of the failure of the nominal plaintiffs to make a sufficient proffer of their ability to "trace" their Elscint shares to the public offering. Plaintiffs further contend that the motion to intervene is not barred by the three-year limitation period of Section 13 of the 1933 Act, 15 U.S.C. § 77m, because, under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the statute of limitation was tolled by the filing of the class action.

Defendants argue that the proposed intervention is barred by the three-year limitation period of Section 13 on the ground that this limitation is absolute and cannot be tolled by the filing of a class action. In the alternative, they contend that even if intervention is allowed, the proposed intervenors should only be permitted to assert their individual claims and should not be allowed to represent a class.

In *American Pipe*, purported members of a plaintiffs' class moved to intervene in the original action after a motion for class certification was denied. The defendants opposed the intervention as barred by the statute of limitation. The Supreme Court concluded that

> at least where class action status has been denied solely because of failure to demonstrate that "the class is so numerous that joinder of all members is impracticable," the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.

*American Pipe & Construction Co. v. Utah*, 414 U.S. at 552–53, 94 S.Ct. at 766.

The Court reasoned that this tolling rule was necessary to protect the interests underlying class actions. Without such a rule, Rule 23 class actions would be deprived of "the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable." *Id.* at 553, 94 S.Ct. at 766. The Court also concluded that tolling the statute of limitation for all asserted members of the class would not infringe on the interests protected by statutes of limitation:

> [S]tatutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." The policies of ensuring essential fairness to de-

fendants and of barring a plaintiff who "has slept on his rights," are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id.* at 554–55, 94 S.Ct. at 766–67 (citations and footnotes omitted).

### B.

■ At the outset, I note that the procedural posture of this case is different from that of *American Pipe*, in that *American Pipe* (as well as its progeny) involved attempts to intervene in an action after class certification had been denied or terminated, whereas in this case, I have not yet ruled on plaintiffs' class action motion but have instead expressed only a tentative conclusion that plaintiffs are not entitled to class certification on their Section 11 claims. Nevertheless, I conclude that the benefits of the *American Pipe* tolling rule extend to putative class members who seek to intervene before the motion for class certification is decided as well as after. *Shannon v. Hess Oil Virgin Islands Corp.*, 100 F.R.D. 327, 333 (D.V.I.1983); *cf.* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* para. 23.90[3], at 23–524 n. 9 (2d ed. 1987) ("Unnamed class members have an interest in a lawsuit even before a Rule 23 determination is made that a class action may be maintained on their behalf."). I will therefore proceed to analyze the motion for intervention under the *American Pipe* doctrine.

### C.

■ A potential obstacle to applying the *American Pipe* tolling rule to this case involves the nature of defendants' challenge to the plaintiffs as representatives for the Section 11 claims. In this case, the opposition to class certification with respect to the Section 11 claims is based on the plaintiffs' alleged inability to trace their shares of Elscint stock to the January 1983 prospectus, whereas in *American Pipe*, class certification was denied for lack of sufficient numerosity. In *American Pipe* the Supreme Court stated that the tolling rule applied "at least" in cases in which certification was denied for lack of numerosity. The Court expressly noted, however, that it was not considering a case in which certification was denied "for lack of standing of the representative." *Id.* at 553, 94 S.Ct. at 766.

Although the *American Pipe* decision did not address questions of standing, in interpreting *American Pipe*, federal courts have applied the tolling rule in circumstances in which certification was denied or terminated for reasons other than lack of numerosity, *see, e.g., Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180, 1192 (W.D.Mo.1983) (citing cases), including lack of standing, *see id.; Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir.1975). In *Rose*, the court concluded that "the fact that a class action is disallowed because the class representative lacks 'standing' does not, *per se*, prevent application of the *American Pipe* tolling rule," *Rose v. Arkansas Valley Environmental & Utility Authority, supra*, at 1193. The court reasoned that an action in which certification was denied for lack of standing may often be more likely to give defendants actual notice of the claims against them than an action in which denial was based on lack of "typicality" or "commonality." *Id.* As to the need to avoid needless duplication of motions, the court stated:

Standing questions are ones with which both skilled counsel and skilled courts sometimes experience considerable difficulty, even after extensive discovery and when intimately acquainted with the facts.... I can see no more reason, as a general matter, to require a passive class

member to anticipate the existence of and ultimate ruling upon that question than to require him to do so with respect to questions of "numerosity," "commonality" or "typicality."

*Id.*

Despite this analysis of the confluence of the *American Pipe* doctrine and questions of standing, I am troubled by the potential abuse of a rule extending class action tolling to all cases in which certification is denied for lack of standing. Although, as the court concluded in *Rose*, lack of standing may not *per se* mandate an exemption from the application of the tolling rule, in certain circumstances the allowance of intervention after certification has been denied for lack of standing may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule. I conclude that this practice is an impermissible use of intervention, akin to the improper use of intervention to manufacture jurisdiction. *See Applebaum v. State Farm Mut. Auto. Ins. Co.*, 109 F.R.D. 661 (M.D.Pa.1986) (intervention in purported class action denied after sole nominal plaintiff's individual claim was dismissed); *cf. McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir.1979) ("A motion for intervention is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."). I conclude that it would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the asserted class to have the effect of tolling limitation to permit the otherwise untimely intervention of proper class representatives.

Those cases which have applied the class action tolling rule after class certification was denied for lack of standing do not contradict this conclusion. In *Haas v. Pittsburgh National Bank, supra,* a plaintiff brought a class action challenging the methods by which three banks computed interest on their customers' credit card accounts. Although the original plaintiff did not allege standing with respect to one of the defendant banks, Equibank, the court granted her class representative status as to all three banks. However, in light of two subsequent decisions from higher courts, the district court determined that its certification order was improper as to Equibank. Instead of granting summary judgment for Equibank, the court allowed the complaint to be amended to add a nominal plaintiff who had standing against Equibank, and the action was maintained as a class action against all three banks. The court of appeals held that the amendment to add the additional plaintiff was timely because the filing of the class action had tolled the statute of limitation. *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d at 1098.

In *Rose,* the court also had before it an action in which an initial order of class certification was later revoked on the ground that the nominal plaintiff lacked standing. In proceedings in the Northern District of Alabama, a plaintiff had been certified to represent all purchasers of defendants' bonds issued in 1972 and 1973, although the plaintiff himself had only purchased bonds from the 1972 series. Upon reconsideration of its certification order, the Alabama district court concluded that the nominal plaintiff could not represent purchasers of the 1973 series and dismissed all claims relating to that series. Purchasers of the 1973 series then filed suit in the Western District of Missouri. In *Rose,* the Missouri district court ruled that the filing of the original class action had tolled the statute of limitation as to actions concerning the 1973 bonds and allowed the action by 1973 bondholders to proceed.

The circumstances of *Haas* and *Rose* are distinguishable from those of this case. First, there is a difference in the procedural posture of the cases. Unlike this case, the courts in both *Haas* and *Rose* had originally certified a class but later reconsidered and terminated some aspect of the certification for lack of standing. The initial certification may be considered significant to those courts' decisions because it served to give firm notice of the claims to defendants and also gave unnamed class

members assurance that they had no need to attempt to intervene.

Second, there is a substantive difference among the cases. In both *Haas* and *Rose,* the original nominal plaintiffs had standing to litigate at least some of the claims they brought, even though not all of them. Thus in *Rose,* the plaintiff was allowed to continue as a class representative for holders of 1972 series bonds, and in *Haas,* the plaintiff continued as a representative for persons who held credit cards from two of the three banks. In contrast, for reasons stated below, if intervention were allowed in this case, not only would the original plaintiffs not be able to serve as class representatives for the Section 11 claims, they would not even be members of the class which the intervenors would be certified to represent.

### D.

As explained in the Class Certification Memorandum, the nominal plaintiffs have failed to proffer any evidence that would support a finding that any one of them more probably than not purchased some determinate number of shares that can be traced to the January 1983 prospectus. As that Memorandum stated:

> Plaintiffs' memorandum makes clear that each plaintiff purchased all
>
> his Elscint shares in the open market. (No plaintiff presently asserts, or alleges knowledge, as to whether the shares he purchased were, in whole or in part, issued pursuant to the 1983 Prospectus).

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification at 3 (Docket No. 42).

Defendant underwriters argue that under *Barnes v. Osofsky,* 373 F.2d 269 (2d Cir.1967) and numerous later precedents, because of the inability of plaintiffs to trace their open market purchases to holders of "new" shares of Elscint stock (that is, shares issued pursuant to the January 1983 Prospectus), they cannot recover under Sections 11 ... and therefore cannot be suitable class representatives for a class of claimants under these

sections. Accordingly, defendant underwriters also argue that plaintiffs cannot support their attempt to certify a defendant class.

In Point III of their Reply Memorandum, plaintiffs respond that the court

> should not require the traditional, anecdotal proof of a chain of title as to open market purchases which would conclusively show, beyond question, that the shares purchased by each class member, or the named plaintiffs, were "the shares" issued in the January 18, 1983 underwriting. Rather, they should be permitted to establish that they purchased such shares by a preponderance of evidence consisting of statistical analysis. Such evidence, sometimes called "probabilistic," has been increasingly accepted by courts in several areas of fact or statutory fact actions. *See, e.g., In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740 (E.D.N.Y.1984), and authorities discussed therein.

As is all too often characteristic of advocates' framing of issues, the characterization of the tracing requirement as one of "anecdotal" proof is an overstatement, not likely to persuade an impartial mind. Nor do the precedents regarding tracing require that a plaintiff "conclusively show, beyond question" that the shares purchased were "new" shares. On the other hand, neither can plaintiffs' alleged claim be lightly dismissed—as defendants would have it—as one with no better foundation than an argument that their stock " 'might' have been issued pursuant to the challenged registration statement." Sur-reply of the Named Underwriters at 7 (*citing Lorber v. Beebe,* 407 F.Supp. 279, 287 (S.D.N.Y.1975)).

These contrasting overstatements obscure the distinction between the substantive standard that is well established in the precedents—that only one who can prove a purchase of "new" shares can have a viable claim under Section 11— and the standard of persuasion. The applicable standard of persuasion is the preponderance of the evidence standard.

Thus, unless the precedents interpreting Section 11 are determined to have established some special rule on the burden of persuasion, one would expect that a claimant may recover under Section 11 if able to prove, by a preponderance of the evidence, the purchase of some particular number of "new" shares, each at some particular price, so as to support determinations of both liability and amount of recovery.

Also, ordinarily proof may be either direct or circumstantial, or both, and circumstantial evidence may include statistical evidence if it is based on data that are adequately authenticated and supportably interpreted.

Plaintiffs' submissions in this case, however, do not make any proffer of evidence, even including the statistical evidence proffered, that would support a finding that any of the plaintiffs, at the times they purchased, more probably than not purchased at least some determinate number of "new" shares. Their purchases are said to have occurred on the following dates:

> May 17, 1983
> August 4, 1983
> July 24, 1984
> August 10, 1984
> October 9, 1984
> October 15, 1984
> January 11, 1985
> February 13, 1985
> April 1, 1985
> May 14, 1985
> May 16, 1985
> May 17, 1985

Affidavit of John C. Hammerslough at 2. The affiant Hammerslough calculates that

the probability exceeds 50% that each purchase made after May 6, 1983 included some New Shares, and the probability exceeds 82% that each purchase made after January 6, 1984 included some New Shares.

*Id.* But, even apart from defense challenges to Hammerslough's premises and inferences (which I need not and do not evaluate in deciding the present motion),

this proffered evidence falls short of supporting an inference, reasoned from evidence, that any one of the plaintiffs, more probably than not, purchased at least some determinate number of "new" shares.

Class Certification Memorandum at 12–15.

As observed in the Class Certification Memorandum, in order to hold in these circumstances that plaintiffs would have claims typical of purchasers of "new" shares and would be appropriate class representatives, it would be necessary not only to hold that Section 11, properly construed, would permit such circumstantial proof of purchase of "new" shares but also that the substantive standard under Section 11 is somewhat less demanding than a requirement that the claimant be a purchaser of a determinate number of new shares at a determinate price.

In citing *In re Agent Orange Product Liability Litigation,* plaintiffs appear to be seeking some relaxation of the substantive standard, usually stated as a requirement of "tracing" particular shares. And, indeed, recent developments in the law of causation, especially in tort cases, provide supporting analogies. Some courts, for example, have in special circumstances sustained a fact finding that a defendant's negligence was a "substantial factor" in causing harm to a plaintiff on evidence (which might be characterized as "statistical" or "probabilistic") that was insufficient to support a reasoned inference that, more probably than not, defendant's negligence was a factor contributing to the occurrence of the harm. *E.g., Hastings v. Baton Rouge General Hosp.,* 498 So.2d 713 (La.1986) (jury must determine whether failure of hospital, emergency room physician, and surgeon-on-call to perform immediate surgery on stab-wound victim was a substantial factor in his death; although defendants' evidence showed survival rate after surgery would have ranged from 32.1–40%, plaintiff need not prove that surgery would have saved the decedent, only that the malpractice lessened his chances of survival); *Hake v. Manchester Township,* 98 N.J. 302, 486 A.2d 836 (1985) (juve-

nile found hanged at police station; on causation issue, held that it would be sufficient to make a case for the fact finder that plaintiff show that defendant's negligent conduct negated a substantial possibility that prompt rescue efforts would have been successful); *Sharp v. Kaiser Found. Health Plan,* 710 P.2d 1153 (Colo.Ct.App. 1985) (medical malpractice for misdiagnosis of heart condition; although even with misdiagnosis, plaintiff only had 35–40% risk of heart attack, expert's testimony that misdiagnosis had increased that risk by 20–25% is sufficient evidence of causation in fact to allow a jury to consider whether the increased risk of harm from defendant's failure to provide proper treatment was a substantial factor causing plaintiff's injuries), *cert. granted,* No. 85SC339 (Colo. Dec. 9, 1985); *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984) (medical malpractice action against chiropractor; even though the most favorable evidence estimated patient's chance of survival for a stated period of time in the absence of negligence to be 40%, whether defendant's negligence was a "substantial factor" in death of patient within that period was for the jury). *See also* the opinions in *Herskovits v. Group Health Cooperative,* 99 Wash.2d 609, 664 P.2d 474 (1983) (evidence that patient having less than 50% chance of cure had chances reduced by negligent diagnosis). *But compare, e.g., Gooding v. University Hosp. Bldg., Inc.,* 445 So.2d 1015 (Fla.1984). *And see generally* Judge Weinstein's opinion, *In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 833–43 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987).

Most of these decisions have treated the issue as one concerned with what finding of fact must be made to support a legal conclusion of cause-in-fact relationship between a wrongful act and a particular consequence of which the plaintiff complains. Thus, for example, the issue may be whether a fact finding that negligence was a "substantial factor" in causing a claimed harm (such as death) can be sustained on evidence that supports a reasoned inference that the negligence increased the risk of death by 25% but does not support a

reasoned inference that it is more than 50% probable that death would not have occurred but for the negligence. To the extent that any of these decisions holds that traditional requirements have been relaxed so that statistical and expert opinion evidence that negligence increased the risk of death by 25% is enough to support a fact finding that the negligence was a cause in fact of the death, plaintiffs may plausibly argue that, by analogy, the traditional requirements for "tracing" should be relaxed so that they can be found to have satisfied the "tracing" requirement by the "statistical" or "probabalistic" evidence they tender, even though it falls short of supporting a reasoned inference that any determinate number of shares purchased by a plaintiff (a minimum number, at least) more probably than not were "new" shares. Though recognizing the plausibility of the analogy, I conclude that the reasons for relaxation of the substantive requirements for a cause-in-fact finding in the contexts of these tort cases are inapplicable to the present context of securities laws. In the first place, the recent tort cases developing a relaxed standard for causation concern the scope of liability for physical harm. Both traditionally and currently, legal protection for financial loss not accompanied by physical harm is less expansive. *See Barber Lines A/S v. M/V Donau Maru,* 764 F.2d 50 (1st Cir.1985). Also, these recent developments represent an exceptional expansion of liability even for physical harms; thus, the contrast between these cases and the present securities law case is even greater than the contrast between physical harm cases generally and securities law cases generally.

In a 1986 decision, the Fourth Circuit, rejecting arguments for relaxing the substantive requirements for causation in fact, adhered explicitly to traditional standards of causation and proof in order to avoid the risks of confusion and injustice incident to ill-defined alternative standards, but interpreted Maryland tort law as fashioning a new definition of harm that is sharply in contrast with the defined harm for which a remedy is sought in a wrongful death ac-

tion; under this new definition of harm, a cause of action is recognized for loss of a "substantial possibility" of survival. *Waffen v. United States Department of Health and Human Services,* 799 F.2d 911 (4th Cir.1986). It seems an even more attenuated analogy to treat this precedent, which recognized a cause of action based on a wholly new definition of harm, as support for plaintiffs' argument that the "tracing" requirement should be relaxed in the present context.

After further consideration, I now reach as a firm conclusion the view tentatively expressed in the Class Certification Memorandum: For a lower court to assume that the Supreme Court will accept these physical-harm tort analogies for application to Section 11 cases, or will otherwise modify the "tracing" requirement as it has been stated repeatedly in circuit and district court opinions of the last twenty years, would be rash, indeed. Instead, I conclude that even though the decided cases have not involved precisely the issue presented here, and the issue may thus in some sense be one of first impression, the weight of precedent and analogy supports a rejection of the plaintiffs' request for certification of a plaintiff class under Section 11. Plaintiffs cannot satisfy either the typicality requirement or the adequacy of representation requirements of Rule 23. For these reasons, no certification of a plaintiff class can be justified by reason of the assertion of Section 11 claims.

Plaintiffs' failure to establish their ability to "trace" a determinate number of their Elscint shares to the January 1983 offering not only disqualifies them as class representatives but also excludes them from membership in the class itself. The class that proposed intervenors might properly represent could not properly extend to persons who could not "trace" their shares to the offering at issue; as a matter of law, such persons have no claim upon which relief could be granted. Thus, the original plaintiffs are persons whose submissions before this court fail to bring any of them within the definition of the class to be represented by the proposed intervenors. I conclude that to apply the class action tolling rule in these circumstances would be an improper extension of the *American Pipe* doctrine. I am not aware of any authority that would support the application of the tolling rule to allow a timely filed claim of persons who are not themselves members of an appropriate class to toll the statute of limitation for later filing and certification of a class that could not properly include them. The motion for leave to intervene and the motion to certify a plaintiff class for Section 11 claims will therefore be denied.

## II.

The conclusions stated above with respect to plaintiffs' insufficient proffer of evidence that they can "trace" any of their shares to the January 1983 offering clearly implicate not only plaintiffs' ability to represent a class with respect to the Section 11 claims but also their standing to assert their individual claims. Various defendants' motions to dismiss the Section 11 claims under Fed.R.Civ.P. 12(b)(6) raised the "tracing" argument, but did so in the context of the adequacy of the pleadings; the motions were based not on a challenge to the sufficiency of the plaintiffs' evidence concerning their ability to trace their shares, but rather on a contention that the complaint failed properly to allege their ability to "trace." Although arguments concerning the sufficiency of the plaintiffs' proffer of statistical evidence were made in the defendants' memoranda of law in response to plaintiffs' opposition to the motions to dismiss, and proffers of evidence have been submitted by plaintiffs in relation to their motion for class certification, I conclude that I should nevertheless treat the motions to dismiss as directed only to the sufficiency of the pleadings and not as the equivalent of motions for summary judgment. To do otherwise in the circumstances of this case would unfairly convert motions to dismiss into motions for summary judgment without adequate notice and opportunity to respond.

Construed as challenges to the sufficiency of the pleadings, these motions to dismiss cannot be sustained on the ground of

failing to allege "traceable" shares explicitly, because the pleadings are not so narrowly stated that evidence of a particular plaintiff's ability to "trace" shares to the 1983 offering would be outside the pleading. This ruling is, however, without prejudice to later submission of any properly supported motion for summary judgment demonstrating that there is no genuine dispute of fact about a plaintiff's inability to "trace."

Other aspects of various defendants' motions to dismiss the Section 11 claims may be decided on the pleadings. I turn to certain of those matters below.

### III.

Section 11 makes subject to suit:

(1) every person who signed the registration statement;

(2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him.

(5) every underwriter with respect to such security.

15 U.S.C. § 77k(a).

### A.

■ Various defendants have moved to dismiss the Section 11 claims for failure to properly plead compliance with the Section 13 statute of limitation, which requires an action under Section 11 to be brought within one year of the date the alleged misstatements or omissions are discovered or reasonably should have been discovered. *See* 15 U.S.C. § 77m. The complaint's allegation of compliance with the statute of limitation states: "This action has been commenced within one year of the discovery of the misstatements and omissions and within three years after the public offering." Consolidated Amended and Supplemental Complaint ("Complaint") para. 75. Defendants contend that this allegation is insufficient because it fails to allege specific facts showing the circumstances of compliance, such as the time and circumstances of discovery, reasons why the alleged fraud was not discovered earlier, and the means of plaintiffs' diligence in making the discovery. *See, e.g., Kroungold v. Triester,* 407 F.Supp. 414, 419 (E.D. Pa.1975).

Plaintiffs' memorandum of law in opposition to the motions to dismiss specifies their contentions with respect to compliance with the statute of limitation. Plaintiffs' Memorandum (Docket No. 78) at 87–88. I conclude that the allegations in the legal memorandum are sufficient to defeat defendants' motions to dismiss on this ground. The specific allegations in the legal memorandum are sufficient to demonstrate the basis of plaintiffs' general allegation of compliance and, if made in the complaint, would be sufficient to withstand the motions to dismiss. If the motions were allowed, plaintiffs would plainly be allowed to amend their complaint to add the specific allegations made in the memorandum. I conclude that it would not be an efficient use of public or private resources to delay consideration of this aspect of defendants' motion in order to require plaintiffs to amend their complaint to add these allegations. The motions to dismiss on the ground of failure to comply with Section 13 will therefore be denied.

### B.

■ Defendant Ernst & Whinney, an accounting firm, argues that the Section 11

claim against it must be dismissed for failure to allege that Ernst & Whinney certified or was named in the January 18, 1983 Registration Statement as is required by Section 11(a)(4).

The complaint does not allege that Ernst & Whinney was "named as having prepared or certified any part of the registration statement," but alleges that, "[d]uring the class period alleged herein, E & W provided 'independent' auditing and accounting services in connection with Elscint's financial statements, and assisted in the preparation and filing of periodic reports required to be filed by Elscint with the SEC, for which E & W received fees from Elscint." Complaint para. 18. However, the complaint fails to identify any specific "report or valuation which [was] used in connection with the registration statement ... which purports to have been prepared or certified" by Ernst & Whinney. 15 U.S.C. § 77k(a)(4). Because these conclusional allegations concerning the existence of such reports or valuations fail to provide opposing parties and the court with any basis for knowing that any claim asserted is one that meets the requirements of Section 11(a)(4), and for reasons stated below, I conclude that the complaint is insufficient to state a Section 11 claim against Ernst & Whinney.

I recognize that this conclusion is not consistent with contemporaneous explanations of the spirit of the Federal Rules of Civil Procedure when they were promulgated in 1937. As explained by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Rules established only minimal notice requirements for pleadings:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

*Id.* at 47–48, 78 S.Ct. at 103 (footnotes omitted).

Under this interpretation of the Rules, plaintiffs' conclusional allegations might be considered sufficient to state a claim. However, the complaint must also be evaluated under the established body of precedent which has created exceptions to these liberal pleading rules. In specific circumstances, courts have required complaints to "do more than state simple conclusions; they must at least outline the facts constituting the alleged violation." *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir.1979) (civil rights complaint). The First Circuit has recently applied this standard in the context of a complaint alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10(b)–5. *Lefkowitz v. Smith Barney, Harris Upham & Co.,* 804 F.2d 154, 156 (1st Cir.1986) (citing *Fisher v. Flynn, supra* ). Because actions under Section 10(b) and Rule 10b–5 are similar to actions under Section 11, both in terms of subject matter and the applicability of the pleading requirements of Rule 9(b), I conclude that this action is sufficiently analogous to the exception to the historical pleading requirements recognized in *Lefkowitz* that it should be governed by the exception rather than the general rule. Accordingly, in the absence of any allegations specifying reports or valuations used in connection with the registration statement, I conclude that the complaint fails to state a Section 11 claim against defendant Ernst & Whinney.

■ Plaintiffs argue that even in the absence of documents falling within the ambit of Section 11(a)(4), Ernst & Whinney can be held liable for aiding and abetting the accountants named in the registration statement. Plaintiffs rely on *Zatkin v. Primuth,* 551 F.Supp. 39 (S.D.Cal.1982), for the proposition that Section 11 encom-

passes aider and abettor liability. The weight of authority, however, is to the contrary. *See Ahern v. Gaussoin*, 611 F.Supp. 1465, 1484 (D.Or.1985); *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. 1028, 1034 (D.Minn.1981); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 642–43 (N.D.Cal.1980), *reconsidered on other grounds*, 581 F.Supp. 878 (1984). Furthermore, although not in the context of considering aiding and abetting liability, the Supreme Court has adopted a narrow construction of Section 11 liability. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 n. 11, 103 S.Ct. 683, 687 n. 11, 74 L.Ed.2d 548 (1983). I conclude that plaintiffs' effort to state a claim against Ernst & Whinney on an aiding or abetting theory fails.

The Section 11 claim against Ernst & Whinney will be dismissed.

### C.

■ Defendant Meir Dvir has moved to dismiss the Section 11 claim against him on the ground that he is not within the class of potential defendants defined by the statute. The complaint alleges that "Defendant Meir Dvir was at all relevant times Chief Operating Officer and General Manager of Elscint." Complaint para. 9. Dvir is not alleged to have signed the registration statement, or to have been a director (or person with similar functions) or a partner in Elscint at the time the registration statement was filed. The allegation that he was a high ranking officer in Elscint is not sufficient to state a Section 11 claim against him; an officer is not liable unless he was also a director, was named in the registration as about to become a director, or signed the registration statement. *Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 507 (S.D.N.Y.1984).

The Section 11 claim against Meir Dvir will be dismissed.

### ORDER

For the reasons stated in the foregoing Memorandum, it is ORDERED:

Plaintiff's motion to intervene is denied.

Plaintiffs' motion to certify a plaintiff class with respect to their Section 11 claims is denied.

Defendants' motions to dismiss the Section 11 claims in Count V are allowed with respect to defendants Ernst & Whinney and Meir Dvir. In all other respects they are denied.