**CASH ENERGY, INC., et al., Plaintiffs,**

v.

**Melvin WEINER, et al., Defendants.**

**Civ. A. No. 90–12624–K.**

United States District Court,
D. Massachusetts.

June 26, 1991.

Carl K. King, Posternak, Blankstein & Lund, Boston, Mass., for plaintiffs.

Robert S. Sanoff, Nicholas C. Theodorou, Foley, Hoag & Eliot, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This case concerns the alleged environmental contamination of a property in North Andover, Massachusetts, owned and developed by plaintiffs. Over a period of years, defendant corporations engaged in the storage and/or transfer of chemical solvents on a site adjacent to plaintiffs' property. A commercial condominium was created on plaintiffs' property in the fall of 1986.

Now before the court are the following: (1) Defendants' Motion to Dismiss (Docket No. 7, filed December 17, 1990), together with a supporting memorandum (Docket No. 8, filed December 17, 1990); (2) Plain-tiffs' Memorandum in Opposition (Docket No. 21, filed April 3, 1991); (3) Affidavit of Mark O. Henry and attached exhibits (Docket No. 22, filed April 3, 1991); and (4) Defendants' Reply Memorandum in Support of their Motion to Dismiss (Docket No. 23, filed May 1, 1991).

At issue here is the motion of all defendants to dismiss plaintiffs' claim under Mass.G.L. c. 93A, and the motion of individual defendants Melvin L. Weiner, William E. Stilwell, Jr., Howard C. Cobin, and James F. Creen ("the individual defendants") to dismiss all claims against them.

### I. Chapter 93A Claims

In Count VIII of their Verified Complaint (Docket No. 1, filed October 31, 1990), plaintiffs allege against each of the defendants (both corporate and individual) a claim under the Massachusetts Consumer Protection Act, Mass.G.L. c. 93A, § 11. This is a bold and novel claim. Massachusetts courts have held repeatedly that section 11 extends Chapter 93A to the "business context," *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768, 774–75 (1975), *Lantner v. Carson*, 374 Mass. 606, 373 N.E.2d 973, 976 (1978), but they have never applied Chapter 93A to a dispute between business entities whose only relationship arises from their ownership and use of neighboring properties.

The primary theory is that defendants are liable because they failed to inform Cash Energy of the contamination of their own site when they discovered the problem in the fall of 1986—despite their alleged knowledge of Cash Energy's incipient plans for condominium development.

Section 11 provides that:

Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action....

The statute on its face requires that both the injured party and the injuring party be engaged "in the conduct of any trade or commerce." Plaintiffs argue that it does not require any business relationship between the parties. Defendants argue that Chapter 93A does not apply unless the parties share a "business relationship." Memorandum in Support at pp. 5–7.

Two different kinds of "business relationship" are apparent. First, the statutory phrase "unfair method of competition" suggests a competitive relationship; the complaint does not allege that such a relationship existed here. Second, the statutory phrase "unfair or deceptive act" suggests a relationship as parties to a transaction. The complaint does not allege such a relationship, and plaintiffs argue that it need not do so.

Most helpful to the defendants is the statement by the Massachusetts Supreme Judicial Court ("S.J.C.") that "... § 11 of G.L. c. 93A was intended to refer to individuals acting in a business context *in their dealings with other business persons, ...."* *Manning v. Zuckerman,* 388 Mass. 8, 444 N.E.2d 1262, 1263 (1983) (emphasis added). This statement about the scope of section 11 was cited and restated by the First Circuit in *V.S.H. Realty, Inc. v. Texaco, Inc.,* 757 F.2d 411, 416 (1st Cir. 1985).

On a strictly linguistic analysis, however, the significance of the statement in *Manning* is less helpful to defendants when one takes account of the full sentence from which the foregoing quotation is extracted:

> As this court has frequently stated, § 11 of G.L. c. 93A was intended to refer to individuals acting in a business context in their dealings with other business persons, *and not to every commercial transaction whatsoever.*

*Manning,* 444 N.E.2d, at 1263 (emphasis added). This passage was a restatement of past S.J.C. decisions. It did not imply that a new rule was being generated in *Manning* itself. Also, none of the three cases cited described the scope of section 11 as explicitly requiring a transactional business relationship between the parties. *See*

*Lantner,* 373 N.E.2d at 976 (1978); *Nader v. Citron,* 372 Mass. 96, 360 N.E.2d 870, 871 (1977); *PMP Associates v. Globe Newspaper Co.,* 366 Mass. 593, 321 N.E.2d 915, 917 (1975). It would thus seem inappropriate to interpret *Manning* as formally declaring an additional requirement for stating a claim under Chapter 93A.

The full context also makes clear that the distinction made in *Manning* was between a transaction in a business context and a transaction not in a business context. Indeed, this has been the focus of the entire section 11 line of cases. As indicated by two more opinions on which the defendants rely, the question invariably has been "whether parties *to a transaction* are engaged in trade or commerce," *Nei v. Burley,* 388 Mass. 307, 446 N.E.2d 674, 680, (1983), or "whether a private individual's participation *in [a given] transaction* takes place in a 'business context.'" *Begelfer v. Najarian,* 381 Mass. 177, 409 N.E.2d 167, 176 (1980). All of these formulations take as an assumed premise that there was some transaction. The facts of the cases never presented a need to consider a different context.

Nevertheless, when no directly relevant precedents are available to guide this court's resolution of an issue of interpretation of a state statute, *dicta* (and even implied *dicta*) in the state court opinions have substantial weight. Moreover, the assumed premise that, apart from claims of unfair competition, section 11 applies only between parties having some transactional business relationship is consistent with the development of Chapter 93A, enacted as a consumer protection act and later extended to the protection of business entities as well. The common thread is protection against unfair acts and practices in transactions.

In view of the history of development of Chapter 93A and the lack of any precedent supporting plaintiffs' novel argument for an expansive reading that, to say the least, tests the limits of common sense, I conclude that the motion to dismiss the Chapter 93A claims in the plaintiffs' complaint must be allowed.

## II. Claims Against Individuals

Defendants also attack the legal sufficiency of all claims against the four individual defendants. These claims are variously founded upon the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), § 107, codified at 42 U.S.C. § 9607 (Counts I and II), Mass.G.L. c. 21E (Count III), and the common law actions of trespass and negligence (Counts IV, V, and IX).

### A. Grounds for Claims Against Individuals in the Corporate Hierarchy

■ Traditional principles of corporate law preclude individual liability unless grounds are shown either for piercing the corporate veil or finding active personal involvement in a tortious act. *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748, 751–52 (1968); *Marks v. Polaroid Corporation,* 237 F.2d 428 (1st Cir.1956), *cert. denied,* 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550 (1957). Plaintiffs proceed on the latter theory.

■ The governing standard has been stated in this way: "What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 907 (1st Cir.1980). It may be sufficient that "the record indicates an issue of fact concerning [the officer's] possible involvement in matters that might have caused the plaintiff's injury," *Mangual v. General Battery Corp.,* 710 F.2d 15, 20 (1st Cir. 1983), or concerning whether the officer is "the guiding spirit" in the tortious affair, *Marks,* 237 F.2d at 435. Nonetheless, a problem remains as to what level of specificity of allegations of involvement and causation is required to survive a motion to dismiss.

CERCLA and analogous statutes have established new bases for legal responsibility—that is, bases beyond the two accepted at common law. If different, the standard for establishing liability under Chapter 21E may be lower than under CERCLA, because the state statute, in addition to applying to all those covered by CERCLA, may apply to persons "who otherwise cause, or are legally responsible for a release or threat of release." Mass.G.L. c. 21E, § 5(a)(5). For the present, however, I assume (as do all parties) that, at least in relation to matters relevant here, the same standard governs CERCLA and Chapter 21E. This assumption is quite plausible, for courts have consistently interpreted the state statute as conforming with CERCLA. *E.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146 (1st Cir. 1989).

Both CERCLA and Chapter 21E apply to the current "owner and operator" of the site, and plaintiffs attempt to place the individual defendants in this category. The meaning of "owner and operator" is in dispute. A number of courts have held that the crucial characteristic identifying a person or entity as coming within the phrase "owner and operator" is the "authority to control the handling and disposal of hazardous substances." *United States v. Northeastern Pharmaceutical & Chemical Co. (NEPACCO),* 810 F.2d 726, 743 (8th Cir.1986); see *Kelley ex rel. Michigan Natural Resources Comm'n v. Arco Industries Corp.,* 723 F.Supp. 1214, 1218–20 (W.D.Mich.1989) (collecting cases). Though defendants suggest otherwise, the fact that the corporate officer in *NEPACCO* "personally participated" in the tortious conduct was not essential to the holding. The *Kelley* test does not *require,* as defendants suggest, "evidence of responsibility undertaken for waste disposal practices," Reply Memorandum at p. 3, though it does list examples of such evidence as useful factors to be weighed. Many of the court opinions discussed in *Kelley* appear to say that the mere ability to exercise control will suffice, because the object of the inquiry is whether the individuals had the capacity to prevent the harm.

Other courts, however, have held that "more than mere ability to exercise control" is required to support the conclusion that a party is liable. *Rockwell International v. IU International,* 702 F.Supp.

1384, 1390 (N.D.Ill.1988); *see Wellesley Hills Realty Trust v. Mobil Oil*, 747 F.Supp. 93 (D.Mass.1990).

For reasons to be explained below, I conclude that I can and should rule on the present motion to dismiss without resolving this disputed issue regarding the nature and degree of "control" essential to a claim against a corporate officer individually. In any event, an issue remains regarding specificity of pleading.

### B. *The Uninformative Complaint*

■ All of the claims against the individual defendants hinge upon paragraph 48 of the complaint, alleging that "at all relevant times," the four officers "actually participated in and exercised control over the affairs of one or more of the Service Chemical [corporate] Defendants." Defendants characterize this allegation as a "bald, nonspecific assertion." Motion to Dismiss, p. 3. Plaintiffs contend that, read in conjunction with the description of Service Chemical Defendants' activities in ¶¶ 18, 19, and 23, and the description of the corporate officers' positions in ¶¶ 11–14, it is sufficient to allege a *prima facie* case under the federal statute, the state statute, and the common law.

To bolster their position, plaintiffs moved for discovery the day following the filing of the Motion to Dismiss. Discovery having been stayed pending decision on the Motion to Dismiss (see Memorandum and Order, Docket No. 18, March 13, 1991), they instead submitted along with their Memorandum in Opposition the Henry affidavit and attached exhibits.

The Henry affidavit was accompanied by two batches of documents culled from the public records of the Massachusetts Department of Environmental Protection (formerly the Department of Environmental Quality Engineering). The documents tend to show that all four individual defendants were actively involved in the clean-up of the contaminated site at some time between 1987 and the present. In addition, they tend to show that one of them, Mr. Stephen Weiner, was actively involved in chemical storage on the North Andover site as far back as 1978. To these facts, the affidavit adds Mr. Henry's personal belief that all four were actively involved at all relevant times, Henry Affidavit ¶ 9, and relates the experiences upon which he bases this belief. Henry Affidavit ¶¶ 3, 4, 5.

Defendants argue persuasively that the Henry affidavit may not be considered in ruling on the Motion to Dismiss. A 12(b)(6) motion is ordinarily judged on the pleadings alone. 5A C. Wright and A. Miller, Federal Practice and Procedure: Civil 2d § 1356 (1990). In an action involving a claim as serious as individual liability under CERCLA, plaintiffs should be given an incentive to plead thoroughly and carefully from the outset. In appropriate circumstances, plaintiffs may be allowed to amend an initial complaint, but I express no opinion now as to whether allegations such as those in the affidavit would be adequate even if they were included in an amended complaint.

It remains to be seen whether the allegations in the complaint alone are adequate to state the various claims. The crucial paragraph 48 is flawed in several important respects. The first flaw is a failure to give fair notice of the legal theory under which the action is proceeding. With regard to the statutory claims, it fails to state that the individual defendants are being charged under the "owner and operator" category of CERCLA and Chapter 21E liability. With regard to the common law claims, it fails to inform defendants that plaintiffs are attempting to show personal involvement, rather than to justify piercing the corporate veil.

Furthermore, even if the legal theory may be inferred, the complaint does not properly state a claim under the common law. What must be shown is not simply active participation in the "affairs" of the corporations, but that each participated in the relevant tortious affair, and that the conduct of each constituted a "legal cause" of the harm of which plaintiffs are complaining.

Finally, and most fundamentally, plaintiffs' complaint rests heavily on "bald assertion." Plaintiffs fail utterly to state or outline the facts beneath their allegations

that individual defendants participated in and exerted control over the contamination of the North Andover site. In response to defendants' criticism that the complaint rests on bald assertion, plaintiffs point to the modest pleading requirements of the Federal Rules. This response touches on a basic tension among federal pleading rules—a tension that bears further examination.

### C. *Standards of Particularity*

Breaking sharply from the earlier practice of fact pleading, the Federal Rules of Civil Procedure, effective in 1938, embody a principle of summary pleading. The "short and plain statement of facts" prescribed in Rule 8(a) has been interpreted to require only "that the plaintiffs give the defendant[s] fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); see also *Ballou v. General Electric*, 393 F.2d 398, 399 (1st Cir.1968). And the generous policy of amendment mandated by Rule 15 further promotes the aim that disputes be decided on the merits. *United States v. Hougham*, 364 U.S. 310, 316, 81 S.Ct. 13, 17, 5 L.Ed.2d 8 (1960); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Even within the Federal Rules, however, the seeds of a countervailing tendency are sown. First, Rule 9(b) explicitly recognizes an exception for allegations of fraud and mistake, where a higher standard of particularity is required. Second, Rule 8(f), stating that all pleadings shall be construed so as to do "substantial justice," may be read as requiring judges to exercise some degree of discretion rather than invariably applying the general rule of notice pleading. Third, the Rules provide for a "motion for more definite statement" as a formal method of challenging a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). This Rule authorizes the court, upon failure to obey its order for a more definite statement, to "strike the pleading to which the motion was directed or make such order as it deems just." *Id.* This Rule has

been invoked infrequently. More often, a court concluding that a complaint fails particularity requirements either enters an interlocutory order dismissing the complaint, but allowing leave to amend within a specified time, or allows leave to amend and defers ruling on the motion to dismiss. Either type of order has an effect closely analogous to that of an order pursuant to Rule 12(e) that unless a more definite statement is filed within a specific time a further appropriate order will be entered. If a complaint were stricken because of noncompliance with an order for more definite statement, dismissal would be an obvious possibility.

■ Rule 9(b) requires more than the statement of a mere conclusion that the plaintiff has satisfied the elements of a given claim. *See McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980) (collecting cases). Beneath the higher particularity requirement, here as elsewhere, rests a concern about abusive use of legal processes. The rule "operates to diminish the possibility that 'a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence....'" *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir.1979) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975)).

Over time, the exception for fraud has been extended to a number of analogous areas involving statutory causes of action, where the original concern about opportunities for abuse inherent in the freedom to plead conclusions rather than facts applies with like force. New exceptions also have been created independently in areas where reasons for requiring particularity are especially compelling. Occasional decisions had invoked higher particularity requirements well before the onset of the modern civil rights era. See, *e.g., United Grocer's Company v. Sau–Sea Foods, Inc.*, 150 F.Supp. 267 (S.D.N.Y.1957); and cases col-

lected in 5A Wright and Miller, § 1357, nn. 16–21. But it was in the area of civil rights that courts first systematically developed requirements for particularity, or "specificity," a term also used with no apparent suggestion of different meaning.

Apart from the fraud exception prescribed in Rule 9(b), the most frequently occurring context in which specificity of pleading requirements are imposed remains civil rights litigation. This development was well under way before courts or commentators paid much, if any, attention to the tension between Rule 8 and the specificity requirements that precedents were developing in civil rights cases. Though Rule 8(b)'s call for construing pleading rules to achieve "substantial justice" and Rule 12(e)'s provisions regarding motions for more definite statement might have been thought to support these decisions, opinions were not reasoned on this ground.

As claims under 42 U.S.C. § 1983 began to be presented in significant volume, increasingly distinctive requirements of specificity of pleading appeared in circuit court opinions. *See Powell v. Workmen's Compensation Bd.*, 327 F.2d 131 (2d Cir.1964) (upholding the dismissal for lack of specificity of allegations that Workmen's Compensation Bd. conspired to deprive plaintiff of constitutional rights); *Moran v. Bench*, 353 F.2d 193 (1st Cir.1965); *Negrich v. Hohn*, 379 F.2d 213 (3d Cir.1967). For numerous reaffirmations of this policy in the First Circuit, see, *e.g., The Dartmouth Review v. Dartmouth College*, 889 F.2d 13 (1st Cir.1989); *Johnson v. General Elec.*, 840 F.2d 132, 138 (1st Cir.1988); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 108, 111 (1st Cir.1988); *Serrano v. Torres*, 764 F.2d 47 (1st Cir.1985); *Dewey v. University of New Hampshire*, 694 F.2d 1 (1st Cir.1982); *Manego v. Cape Cod Five Cents Savings Bank*, 692 F.2d 174, 177 (1st Cir. 1982); *Glaros v. Perse*, 628 F.2d 679 (1st Cir.1980); *Leonardo v. Moran*, 611 F.2d 397 (1st Cir.1979); *Fisher v. Flynn*, 598 F.2d 663 (1st Cir.1979); *Slotnick v. Staviskey*, 560 F.2d 31 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir.1977); *O'Brien*

*v. Di Grazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976). This development may be understood as the response of the court system to the large percentage of wholly unfounded claims that came into the system as excess baggage along with claims that were meritorious, and claims that were genuinely disputable and thus appropriate for full adjudication.

The trend toward the requirement of higher standards of particularity has accelerated in recent years. Two reasons are apparent. First, the rising cost of litigation has made threats of false claims on the one hand, and false defenses on the other, more powerful weapons of intimidation. This tendency increases both the temptation for parties and their attorneys to wield the weapon and the resulting harm to other parties when the temptation proves irresistible. Second, given the worsening caseload crisis in the federal courts, every additional frivolous claim or defense impairs the quality of justice in the system as a whole. *See Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984).

The most widely accepted extension of the Rule 9(b) exception by analogy is to areas of securities law other than those regulated by Rule 9(b) itself. *See Fleming v. Lind–Waldock & Co.*, 922 F.2d 20 (1st Cir.1990); *Lefkowitz v. Smith Barney, Harris Upham & Co.*, 804 F.2d 154 (1st Cir.1986); *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13–14 (1st Cir.1984); *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972); *Duane v. Altenburg*, 297 F.2d 515 (7th Cir.1962); *In re Elscint, Ltd. Securities Litigation*, 674 F.Supp. 374 (D.Mass. 1987).

It is but a short leap from securities litigation to claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), where mail and wire fraud may constitute predicate acts. Moreover, the opportunity for abusive pleading may be even greater in RICO cases, because of the severity of the remedies provided. *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299 (D.Colo. 1984). Not surprisingly, a specificity standard appears to be developing. It should be noted, however, that some courts have

allowed further discovery before dismissal where the complaint at least does allege facts sufficient to support a reasoned inference that most of the relevant evidence is uniquely within the control of the defendants. *See New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir.1987) (collecting cases).

In addition, in a number of circuits, labor law decisions require a higher measure of particularity in complaints alleging breach of a union's duty of representation, with the effect of depriving union members of their rights. *See Lusk v. Eastern Products Corporation*, 427 F.2d 705, 708 (4th Cir.1970); *Balowski v. International U., United A., A. & A. Imp. Wkrs.*, 372 F.2d 829, 835 (6th Cir.1967); *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182, 186 (9th Cir.1962), *cert. denied*, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229.

Yet another instance of a court's demanding specificity in the allegation of a claim that might be characterized as an analogy to fraud is the recent First Circuit decision on the Petroleum Marketing Practices Act, *Gooley v. Mobil Oil*, 851 F.2d 513 (1st Cir.1988).

In several areas that do not involve fraud, or even analogies to fraud by any stretch of the imagination, courts have nonetheless developed higher standards of particularity in pleading. In each of these areas, increased specificity may be seen to promote "substantial justice."

Some of these areas have been identified as appropriate for a strict standard of particularity of pleading because of a heightened "concern for due process which arises by reason of the 'drastic nature' of the remedies" sought. *United States v. Pole No. 3172*, 852 F.2d 636, 638 (1st Cir.1988) (forfeiture of property bought with proceeds from drug trafficking). *See also $38,000 in United States Currency*, 816 F.2d 1538, 1548 (11th Cir.1987); *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir.1986).

The drastic nature of the remedy invoked may have been a reason underlying the development of a specificity standard in antitrust cases, which (like RICO cases) offer the prospect of treble damages. Another cause for concern has been the unusually high cost of antitrust litigation. *Sutliff*, 727 F.2d at 654. For recent decisions illustrating this trend in antitrust litigation, see *Sutliff*, 727 F.2d at 648; *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 852 (7th Cir.1983); *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. granted on other grounds, and dismissed at* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983).

In the First Amendment context, the Ninth Circuit has held that a complaint that asserts mere conclusions will not suffice to bar a party's right to associate and to petition an administrative agency. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1085 (9th Cir.1976).

One more area where specificity has been invoked by the First Circuit is in actions under the Federal Tort Claims Act. Here, however, the court has sent mixed signals. *Compare K.W. Thompson Tool Co. v. U.S.*, 836 F.2d 721, 728 (1st Cir.1988) (upholding the dismissal of allegations based in part upon their lack of specificity) *with DiMella v. Gray Lines of Boston Inc.*, 836 F.2d 718, 721 (1st Cir.1988) (reversing the dismissal of allegations based upon their lack of specificity).

Policy concerns underlying the development of specificity standards in particular areas of the law have influenced, as well, the amendment of rules of procedure bearing upon attorney and party responsibility for representations made in pleadings and in discovery demands and responses. Amendments of Rule 11 of the Federal Rules of Civil Procedure illustrate the point. They are also relevant to the appropriate disposition of the present matter, because any amendment alleging a factual basis for a claim must, of course, be certified by the signature of a party or attorney pursuant to Rule 11.

In summary, by the fiftieth anniversary of the Federal Rules of Civil Procedure in 1988, the rules of pleading had become less generous and forgiving than they were in

1938. The trend continues. Particularity is more often demanded. Discovery is less often allowed before the pleader is required to allege at least an outline or summary of facts sufficient under the applicable substantive law to support a claim on which relief can be granted, or a defense on which judgment can be entered.

There is a danger that this tendency will be carried too far. The First Circuit's decision in *New England Data Services, Inc. v. Becher* explicitly takes account of the need to strike a balance among the conflicting interests at stake. A specificity standard for pleading must protect against the misuse of frivolous claims without excluding claimants who lack access to the most cogent evidence that would support their claims but nonetheless can allege a reasonable basis for believing that it exists. In some instances, a person is unable to allege with specificity precisely because the relevant evidence is in the exclusive possession of the opponent, who will not disclose except under the compulsion of court sanctioned discovery processes. The First Circuit has observed: "Where there are multiple defendants ... and where the plaintiff was not directly involved in the alleged transaction, the burden on the plaintiff to know exactly [the factual basis of an alleged claim] ... is not realistic." *New England Data Services*, 829 F.2d at 291. In the context of RICO mail and wire fraud, the First Circuit concluded that courts should refrain from automatic dismissal of inadequate complaints, and should instead make a determination as to whether a sufficient factual basis to warrant the allowance of discovery has been alleged.

Is CERCLA yet another area where a high standard of particularity will be required? Although an analogy to fraud is strained, CERCLA involves many of the circumstances that have led courts to invoke higher standards of specificity in other contexts. The consequences of individual liability for an environmental violation may be severe. Even more relevant to the present issue is the fact that defending against a non-meritorious claim—even one that upon reasonable inquiry could be determined to be patently non-meritorious—can be very expensive. The cost of establishing that a claim lacks merit is more likely to be subject to reasonable controls if some standard of specificity of pleading is enforced. I conclude that it is a reasonable prediction that higher courts, including the First Circuit, will extend specificity of pleading requirements to CERCLA cases, with appropriate subsidiary conditions such as were fashioned in *New England Data Services*. Unless and until guidance to the contrary appears in legislation or precedent, I will so rule.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendants' Motion to Dismiss (Docket No. 7) is granted with regard to Count VIII of the Verified Complaint.

(2) The claims against individual defendant in Counts I, II, III, IV, V, and IX will be dismissed unless, on or before July 31, 1991, plaintiffs file an amended complaint that pleads at least an outline or summary of the factual basis for the claims rather than mere conclusions.