**CONDUCTRON CORPORATION,
d/b/a Hendrix Wire & Cable
Company, et al.**

v.

**Gladys P. WILLIAMS, Executrix, Estate
of Thurston V. Williams, et al.**

**Civ. No. 90–148–S.**

United States District Court,
D. New Hampshire.

Aug. 23, 1991.

Gregory W. Swope, Manchester, N.H., for plaintiffs.

Steven J. McAuliffe, Concord, N.H., for defendants.

ORDER

STAHL, District Judge.

In this civil action, plaintiffs seek declaratory and monetary relief under the Comprehensive Environmental Response, Com-pensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, the provisions of New Hampshire Revised Statutes Annotated ("RSA") 147–B, and New Hampshire common law. Jurisdiction is grounded upon 28 U.S.C. §§ 1331, 1355, 2201; 42 U.S.C. § 9613; and the doctrine of pendent jurisdiction. Currently before the Court are several pretrial motions.

*1. Background*

This case concerns the contamination of the Savage Well Superfund Site ("Site") in Milford, New Hampshire. In June of 1985, plaintiffs Conductron Corporation, d/b/a Hendrix Wire & Cable Company ("Hendrix") and Hitchener Manufacturing Company, Inc. ("Hitchener") were among four corporations named by the federal Environmental Protection Agency ("EPA") as parties potentially responsible for the contamination of the Site. In 1987, the four potentially responsible parties ("PRPs") entered into an administrative order by consent with the EPA in which it was agreed that the costs of a remedial investigation and feasibility study for the Site would be shared equally. Subsequently, Hendrix and Hitchener filed separate lawsuits under CERCLA against a number of individual and corporate defendants. *See* civil actions 90–148–S and 90–168–S respectively. Each suit sought both declarations of liability and apportionment of the past and future costs associated with remediating contamination at the site. On September 21, 1990, these actions were consolidated by court order.

The Court now has before it plaintiffs' motion for substitution of a party, defendant Allan Foster's motion for summary judgment and motion to strike, defendant John C. Pappas, Jr.'s motion for summary judgment, and plaintiff Hendrix's countermotion for summary judgment against John C. Pappas, Jr. Facts relevant to the Court's rulings on each of these motions are set forth below. The Court addresses each motion in turn.

*2. Plaintiffs' Motion for Substitution of Party*

■ Plaintiffs have moved to substitute Gladys P. Williams, executrix for the estate

of Thurston V. Williams, for defendant Thurston V. Williams in this action. By a "Suggestion of Death Upon the Record Under Rule 25(a)(1)" dated October 26, 1990, counsel for defendant Thurston V. Williams indicated that Mr. Williams died on August 17, 1990 during the pendency of this action. All defendants other than Gladys P. Williams consent to the granting of this motion. Gladys P. Williams opposes it, but has filed no objection.

The Court has reviewed the instant motion and finds that it conforms with the procedural requirements of Rule 25(a), Fed. R.Civ.P. Moreover, the Court has neither been directed to nor is aware of any authority which suggests that either the federal or state claims against Mr. Williams were extinguished upon his death. Accordingly, plaintiffs' motion for substitution of party is granted. Gladys P. Williams, executrix for the estate of Thurston V. Williams, is hereby made a party to this action.

### 3. Defendant Allan Foster's Motion for Summary Judgment

Plaintiffs have named Allan Foster as an individual defendant in this action. Foster was Sales Manager and Vice–President for Sales of the Williams & Hussey Division of corporate defendant and PRP O.K. Tool Co., Inc. ("O.K. Tool") from the early 1970's to the early 1980's. In addition, Foster is alleged to have owned 2,255 shares of common stock in defendant O.K. Tool Holdings, Inc. ("Holdings") in December of 1986. It is plaintiffs' position that Foster was an owner and operator with sufficient control over the affairs of O.K. Tool to subject him to liability under CERCLA, RSA 147–B, and New Hampshire common law.

Foster has filed a motion for summary judgment to which plaintiffs vigorously object. In support of his motion, Foster has submitted an affidavit which states, *inter alia*, that he "played no role in the management or operation of the O.K. Tool Company, Inc., outside of [his] duties as Vice–President for Sales in connection with the operations of Williams and Hussey" and that he "had no operational responsibility for manufacturing, operations, fabrication, waste or waste disposal, or any of the other day to day activities of the company." Foster Affidavit at p. 2.

The function of summary judgment is to cut through the formal allegations of facts in the pleadings and determine whether a trial is necessary. *See Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); Rule 56, Fed.R.Civ.P. Advisory Committee's note to 1963 amendment. The burden is on the moving party to establish the lack of a genuine, material, factual issue, *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986), and the Court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir.1988). However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Rule 56(e), Fed.R.Civ.P.). Here, Foster argues that he has made the requisite showing and that plaintiffs have failed to set forth genuine, factual issues for trial. The Court does not agree.

In pertinent part, section 107(a) of CERCLA imposes liability on the following classes of persons:

(1) the owner and operator[1] of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or

---

1. In relevant part, CERCLA defines "owner or operator" in the following circular manner:
   ... (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility, and (iii).... Such term does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility.
42 U.S.C. § 9601(20)(A).

operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance[.]

42 U.S.C. § 9607(a). It is plaintiffs' theory that Foster is liable under § 9607(a)(2) and § 9607(a)(3).[2]

■ While the breadth of § 9607(a)(2) ownership liability is not well-settled, courts have held uniformly that corporate officers who assert managerial responsibility and control over the disposal of hazardous waste are within the purview of § 9607(a)(2) as operators. *See, e.g., United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 744 (8th Cir. 1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2nd Cir.1985); *Kelley v. Thomas Solvent Co.*, 727 F.Supp. 1554, 1561 (W.D.Mich.1989); *United States v. Ward*, 618 F.Supp. 884, 894 (D.N.C.1985).

In the instant matter, defendant Foster's assertions of nonresponsibility and control are countered by the May 2, 1991 affidavit of Ronald Backhaus, who served as the manufacturing manager of the Williams & Hussey Division of O.K. Tool from August of 1980 through October of 1984. The Backhaus affidavit paints an entirely different picture of Allan Foster's role in the disposal of the hazardous waste generated by Williams & Hussey than that found in the Foster affidavit.[3] These conflicting accounts of Foster's control over the company's treatment of hazardous waste make apparent that there remain genuine, material, factual issues regarding Foster's possible operational liability under § 9607(a)(2). Accordingly, Foster's motion for summary judgment is denied.[4]

### 4. Defendant Allan Foster's Motion to Strike

Defendant Allan Foster also has filed a motion to strike certain portions of the March 27, 1991 affidavit of Ronald Backhaus and the undated affidavit of Paul N. Stanton. These affidavits were submitted in support of the plaintiffs' objection to Foster's motion for summary judgment.

Because the Court has denied Foster's motion for summary judgment without reference to the disputed portions of the above-mentioned affidavits, it need not reach the merits of the instant motion. Accordingly, Foster's motion to strike is denied as moot.

---

**2.** Application of the substantially similar personal liability provisions of RSA 147–B would not alter the Court's resolution of the instant summary judgment motions because the relevant part of that state statute, RSA 147–B:10, I (a–d), is nearly identical to those sections of 42 U.S.C. § 9607(a) cited above. The Court therefore limits its analysis of the merits of these motions by reference to relevant authority under CERCLA.

**3.** For example, paragraph 10 of the Backhaus affidavit reads:

Shortly after arriving at the plant, I learned that machined steel was cleaned and prepared for painting by wiping it with a rag dipped in paint thinner. Waste paint thinner was dumped in a sand pile behind the plant. I was advised

by several employees that they had been directed to do so by Alan [sic] Foster. I immediately changed this practice and contracted with a company that provided a cleaning service. The company would periodically deliver fresh cleaning fluids and pick up the spent cleaning fluids for ultimate recycling. Alan [sic] Foster personally complained to me about this service stating that it was too expensive and that there was nothing wrong with dumping the waste paint thinner in the sand pile as had been the practice till [sic] that time.
Affidavit of Ronald Backhaus at p. 3.

**4.** Because the Court decides that Foster is not entitled to summary judgment on the issue of liability under § 9607(a)(2), it need not address whether he might be liable under § 9607(a)(3).

**5. Cross–Motions for Summary Judgment Regarding the Liability of John C. Pappas, Jr.**

Plaintiffs seek to hold defendant John C. Pappas, Jr. ("Pappas") liable under § 9607(a)(1) as a current owner and operator of property at the Savage Well Superfund Site. It has filed a motion for summary judgment on this issue. Pappas denies liability and has filed his own motion for summary judgment. The facts relevant to these cross-motions are not in dispute.

Pappas' association with this litigation can be traced to his purchase of all of the issued and outstanding common stock of defendant Holdings in May of 1987. At the time of the purchase, Holdings owned all of the shares of defendant O.K. Tool and defendant Crafts Precision Industries, Inc. ("Crafts").[5] Pappas himself held the above-mentioned stock from the time of the purchase until September of 1987, when he assigned all of his rights, title, and interest therein to defendant Corinthian Properties, Inc. ("Corinthian"). Pappas was and is the sole shareholder of Corinthian.

It is apparent from the record that Pappas' stewardship of Holdings and Corinthian since May of 1987 has involved more than the mere passive ownership of shares.[6] For instance, in June of 1987, Pappas signed an Asset Purchase and Sale Agreement whereby certain of the assets of O.K. Tool were sold to a third party.[7] See Plaintiffs' Exhibit 8. In August of 1987, Pappas, as sole stockholder, approved his own election as Director, Chairman of the Board of Directors, President, and Treasurer of Holdings. See Plaintiffs' Exhibit 9. In December of 1987, Pappas signed another Purchase and Sale Agreement whereby the Williams & Hussey Division of O.K. Tool was sold. See Plaintiffs' Exhibit 14.

Since February of 1988, there have been no manufacturing operations at O.K. Tool. See Pappas' Objection to Hendrix's Motion for Summary Judgment at p. 7. Currently, one portion of the plant is leased to an antique store and another portion is leased to a church group for use as a place of worship. Id. In his motion, Pappas argues that he is shielded from liability as a current owner and operator under § 9607(a)(1) by the fact that any contamination of the Site by O.K. Tool must have taken place prior to his ownership and management of the company. In so doing, Pappas relies primarily upon the protection from personal liability traditionally afforded corporate officers and shareholders who do not participate in the corporation's tort, see, e.g., Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir. 1980), and his perception that no court has found § 9607(a)(1) liability under facts such as these. However, Pappas' position is unavailing.

In Shore Realty, supra, 759 F.2d 1032, the Second Circuit encountered a defendant in a position strikingly similar to that occupied by Pappas. In that case, Donald LeoGrande was the sole officer and shareholder of Shore Realty Corporation ("Shore"), which he had incorporated for the purpose of purchasing a piece of property. Id. at 1038. Before purchasing the land, LeoGrande was fully aware that the previous tenants were operating a hazardous waste storage facility and that the land was contaminated. Id. at 1038–1039.[8] Still, Shore took title to the property.

In addressing Shore's ownership liability, the court first noted that neither Shore nor LeoGrande had participated in the generation or transportation of the hazardous

---

**5.** Crafts formerly was an unincorporated division of O.K. Tool.

**6.** It is equally evident from the record that Pappas was well aware of O.K. Tool's possible liability for the contamination of Savage Well. See Plaintiffs' Exhibit 1 at pp. 36–41.

**7.** In executing this sale, Pappas asserted that he was acting as President of Holdings and O.K.

Tool and in his individual capacity. See Plaintiffs' Exhibit 8 at p. 22.

**8.** In fact, the purchase agreement provided a penalty-free escape clause for Shore if Shore decided not to proceed with the sale after an environmental assessment of the site had been completed. Id.

waste which had contaminated the facility. *Id.* at 1037. Nonetheless, it held that Shore was a current owner as contemplated by § 9607(a)(1) and, as such, was strictly liable. *Id.* at 1044; *see also Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1572–1573 (5th Cir.1988); *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573, 578 (D.Md.1986). In justifying its holding, the court noted:

> It is quite clear that if the current owner of a site could avoid liability merely by having purchased the site after chemical dumping had ceased, waste sites certainly would be sold, following the cessation of dumping, to new owners who could avoid the liability otherwise required by CERCLA. Congress had well in mind that persons who dump or store hazardous waste sometimes cannot be located or may be deceased or judgment-proof. We will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intention otherwise.[9]

*Id.* at 1045 (citations omitted).

After determining that Shore was liable, the court next addressed the issue of Leo-Grande's personal liability. In holding that LeoGrande was liable as an owner, the court reasoned:

> Under CERCLA "owner or operator" is defined to mean "any person owning or operating an onshore facility," *id.* § 9601(20)(A), and "person" includes individuals as well as corporations, *id.* § 9601(21). More important, the definition of "owner or operator" excludes "a person who, without participating in the management of a ... facility, holds indicia of ownership primarily to protect his security interest in the facility." *Id.*

§ 9601(20)(A). The use of this exception implies that an owning stockholder who manages the corporation, such as Leo-Grande, is liable under CERCLA as an "owner or operator." That conclusion is consistent with that of other courts that have addressed the issue. In any event, LeoGrande is in charge of the operation of the facility in question, and as such is an "operator" within the meaning of CERCLA.

*Id.* at 1052 (citations omitted).

■ From the above authority, it is evident that Pappas could well be found to be an "owner and operator" under § 9607(a)(1). Like LeoGrande, Pappas is the sole owner of the company which ultimately owns the contaminating facility. Like LeoGrande, Pappas purchased this facility with full knowledge of its environmental problems. And like LeoGrande, Pappas has exerted and apparently maintains the power to exert a high degree of control over both the facility and the corporate entities which own it. In light of the foregoing, Pappas' motion for summary judgment on the issue of liability is denied.[10]

However, while Pappas' liability might go hand in hand with that of O.K. Tool, Crafts, Holdings, and/or Corinthian, none of these entities has yet been held liable in this litigation. Thus, Hendrix's countermotion for summary judgment is premature and accordingly is denied. Hendrix remains free, of course, to renew the substance of its motion, if appropriate, at some future time.

## 6. Conclusion

For the reasons herein stated, plaintiffs' motion for substitution of party is granted;

---

**9.** The First Circuit, in a recent opinion, referred approvingly to the liberal construction accorded § 9607(a) by the *Shore Realty* court. *See United States v. Kayser–Roth Corp., Inc.,* 910 F.2d 24, 26 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991).

**10.** Pappas' strained attempt to distinguish *Shore Realty* on the basis of certain remedial steps that he took after purchasing Holdings is unpersuasive. In fact, the *Shore Realty* court specifically noted that LeoGrande had both evicted the

polluting tenants and undertaken some small "improvements" upon the property. *Id.* at 1039.

Similarly fruitless is Pappas' argument that O.K. Tool is now dormant and cannot possibly be "a facility from which there is a release or a threat of release", *see id.* at 1044, of hazardous waste. Any force that such an argument might have is undermined by Pappas' own admission that production at O.K. Tool did not cease until February of 1988, nine months after his purchase of Holdings.

defendant Allan Foster's motion for summary judgment is denied; defendant Allan Foster's motion to strike is denied as moot; defendant John C. Pappas, Jr.'s motion for summary judgment is denied; and plaintiff Hendrix's counter-motion for summary judgment against John C. Pappas, Jr., is denied.

SO ORDERED.