**CBS, INC., Plaintiff,**

v.

**Daniel J. HENKIN, Mary H. Henkin, James M. Klapp, Defendants.**

**Daniel HENKIN, Mary Henkin and James Klapp**

v.

**Emerson DeFORD.**

**No. S90–612M.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 7, 1992.

Thomas H. Singer, Eugenia S. Schwartz, South Bend, Ind., Douglas P. Jacobs, Madeleine Schachter, c/o CBS, Inc., John Grosz, John Eicheneyer, Neil Capobianco, New York City, for plaintiff.

Glenn L. Duncan, Elkhart, Ind., Frank J. Deveau, Donald C. Biggs, Indianapolis,

Ind., for defendants Daniel J. Henkin, Mary H. Henkin and James M. Klapp.

Robert J. Konopa, South Bend, Ind., John D. Tully, Grand Rapids, Mich., for third party defendant DeFord.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on defendant Mary Henkin's motion for summary judgment on Counts I, II, V, and VI of the complaint of plaintiff CBS, Inc. ("CBS"). For the reasons that follow, the court concludes that Mrs. Henkin's motion must be granted.

### I. *Background*

In May 1970, Dan Henkin, Mary Henkin, and five other individuals formed the Gemeinhardt Corporation ("Gemeinhardt") for the sole purpose of purchasing all of the outstanding stock of K.G. Gemeinhardt Company, Inc. ("KGGC"), which owned and operated a flute and piccolo plant in Elkhart, Indiana. Shares of Gemeinhardt were issued as follows:

| Keith Rupel | 10 shares |
|---|---|
| Robert Meyer | 10 shares |
| Charles Gableman | 15 shares |
| Daniel Henkin | 20 shares |
| Mary Henkin | 20 shares |
| James Van Horn | 30 shares |
| Kenneth Stanton | 35 shares |

Gemeinhardt completed its purchase of KGGC's stock in May 1970, and the KGGC stock was Gemeinhardt's sole asset. KGGC continued to hold title to the manufacturing plant and surrounding real estate ("the property").

In 1973, James Klapp and Nicholas Jakab became shareholders of Gemeinhardt, with each purchasing 1.75 shares. Daniel Henkin also received another ten shares of Gemeinhardt stock, bringing his total to thirty shares. During 1975, all the original shareholders, except Mary and Daniel Henkin, sold their shares back to Gemeinhardt. A 4000–for–1 stock split also occurred during 1975. After these transactions, the holdings of Gemeinhardt stock were as follows:

| Daniel Henkin | 120,000 shares |
|---|---|
| Mary Henkin | 80,000 shares |
| James Klapp | 7,000 shares |
| Nicholas Jakab | 7,000 shares |

In May 1977, CBS purchased all of KGGC's assets, including the property. KGGC and Gemeinhardt were dissolved shortly thereafter.

In her affidavit, Mrs. Henkin stated that she owned the Gemeinhardt stock in her name, not jointly. She also affirmed that from May 1970 until May 1977 she was a director of Gemeinhardt, but she was not a director of KGGC. She held the title of Secretary–Treasurer of Gemeinhardt and Assistant Secretary of KGGC only for one day and for the sole purpose of closing the sale to CBS.

Mrs. Henkin was never involved in any aspect of the business of Gemeinhardt or KGGC; she never attended a single meeting of shareholders, officers, or directors of Gemeinhardt or KGGC; she never had any responsibility with either corporation; she never saw any financial statements of either corporation; and she never had an office at KGGC's plant. Mrs. Henkin did not visit the plant except for social reasons. She was not involved in the May 1970 purchase of KGGC stock or in the May 1977 sale of assets to CBS. Mrs. Henkin knew nothing about KGGC's manufacturing process; she knew nothing about the wastes that were generated in that process or in the manner such wastes were disposed; and she never personally disposed of or authorized the disposal of any substance at or in the vicinity of the property.

After CBS's purchase of KGGC in 1977, the property was found to contain contaminated groundwater. In 1985, CBS entered into a consent order with the United States Environmental Protection Agency ("EPA") requiring CBS to take measures to mitigate the damage from the contaminated groundwater. CBS alleges that it has incurred and will continue to incur substantial response costs associated with complying with the EPA consent order.

CBS brings this action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),

42 U.S.C. § 9601 *et seq.*, to recover the defendants' equitable share of the response costs that CBS has incurred and will incur in monitoring and mitigating the danger from the contaminated groundwater on the property. Count I of CBS's complaint alleges that Mrs. Henkin is liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), as a former "owner and operator" of the contaminated property. Count II seeks contribution from Mrs. Henkin for CBS's clean up costs pursuant to CERCLA § 113(f), 42 U.S.C. 9613(f). Count V alleges that, under state law, Mrs. Henkin is liable for personally disposing of, or authorizing the disposal of, waste onto the property. Count VI seeks recovery for contribution under state law.

Mrs. Henkin seeks summary judgment on those counts.

## II. *Summary Judgment Standard*

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Duane v. Lane*, 959 F.2d 673, 675 (7th Cir.1992). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy*, 902 F.2d 524, 540 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990); *Tatalovich v. City of Superior*, 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.*, 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991); *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir.1991).

The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991); *McCarthy v. Kemper Life Ins. Companies*, 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992); *Mestayer v. Wisconsin Physicians Service Ins. Corp.*, 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991); *Soldal v. County of Cook*, 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Kizer v. Children's Learning Center*, 962 F.2d 608, 611 (7th Cir.1992).

The court will address Mrs. Henkin's motion with the above standards in mind.

## III. *Preliminary Matters*

Before proceeding to the merits, the court must rule upon two preliminary matters. First, CBS filed an affidavit pursuant to Fed.R.Civ.P. 56(f) in opposition to Mrs. Henkin's motion for summary judgment. Federal Rule of Civil Procedure 56(f) provides:

**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of the party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the

party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ Rule 56(f) allows a party who has no specific evidence contradicting an opponent's motion for summary judgment to endure the motion by presenting both valid reasons for lack of proof and showing how postponement of a ruling will permit the non-movant to rebut the movant's showing. *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1138 (7th Cir.1986), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). Rule 56(f) envisions a situation where summary judgment is sought prior to the initiation of discovery. *Korf v. Ball State Univ.*, 726 F.2d 1222, 1229–30 (7th Cir.1984). The grant or denial of a Rule 56(f) motion is in the discretion of the trial court. *Colby v. J.C. Penney, Inc.*, 926 F.2d 645, 648 (7th Cir.1991); *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1294 (7th Cir. 1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991).

■ A party that has been dilatory in discovery may not use Rule 56(f) to gain a continuance when he has only made vague assertions that further discovery would develop genuine issues of material fact. *Colby v. J.C. Penney Co., Inc.*, 926 F.2d at 648; *United States v. Bob Stofer Oldsmobile Cadillac*, 766 F.2d 1147, 1153 (7th Cir. 1985). A party that fails to make reasonable efforts to complete his discovery is not entitled to a continuance under Rule 56(f). *Colby v. J.C. Penney, Inc.*, 926 F.2d at 648; *Lambs Patio Theatre, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068, 1071 (7th Cir.1978). To justify a continuance, the non-movant must demonstrate that he has pursued discovery diligently. *Pfeil v. Rogers*, 757 F.2d 850, 857 (7th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Ezpeleta v. Sisters of Mercy Health Corp.*, 621 F.Supp. 1262, 1276 (N.D.Ind.1985), *aff'd*, 800 F.2d 119 (7th Cir.1986).

■ CBS petitions the court to deny Mrs. Henkin's motion for summary judgment under Rule 56(f) because numerous facts are within the defendants' sole knowledge and control or within the knowledge and control of people that worked with Mrs. Henkin. Gross Aff., ¶ 3. CBS, however, admits that it "has not yet conducted the depositions of defendants or of any other person with knowledge of the relevant facts." Gross Aff., ¶ 2.

CBS filed this action on December 19, 1990. Since CBS named Mrs. Henkin as a defendant, it was certainly aware that her deposition would probably be required. Yet, during the sixteen months from the filing of its complaint until the filing of the instant motion, CBS did not depose Mrs. Henkin or anyone else. CBS deposed no one at all during two-and-one-half months between Mrs. Henkin's motion and CBS's response. Although CBS conducted discovery by interrogatories, CBS has not explained its failure to depose Mrs. Henkin or anyone else.

Because CBS has not explained its failure to depose, it should not be allowed a continuance to begin conducting depositions at this point. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989) (motion appropriately denied when "plaintiff was aware of the identities of those witnesses critical to his case for over ten months, yet failed to depose"); *Lambs Patio Theatre v. Universal Film Exchanges*, 582 F.2d at 1071 (allowance for further discovery particularly inappropriate where plaintiff failed to make reasonable efforts to complete its discovery); *Richardson v. City and County of Honolulu*, 759 F.Supp. 1477, 1485–86 (D.Haw.1991) (motion denied where defendant had three months to conduct discovery, yet acknowledged that it had not made any discovery requests); *Wilsmann v. Stearns*, 116 F.R.D. 166, 167 (N.D.Ill.1987) (motion denied where plaintiff did not describe any past attempts made to obtain facts and never requested the depositions of those he now seeks to depose). *See also Todd by Todd v. Merrell Dow Pharmacueticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir.1991) (upholding denial of continuance where

plaintiff did not even attempt to contact experts until more than one year after suit was filed).

CBS's motion under Fed.R.Civ.P. 56(f) must be denied.

■ As to the second preliminary matter, Mrs. Henkin contends that CBS has failed to plead a *prima facie* case against her under CERCLA § 107(a)(2). To support this proposition, Mrs. Henkin cites *Cash Energy, Inc. v. Weiner*, 768 F.Supp. 892 (D.Mass.1991). CBS counters by arguing that Fed.R.Civ.P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, CBS argues that *Cash Energy, Inc. v. Weiner* is distinguishable.

The plaintiffs in *Cash Energy* brought suit under CERCLA alleging that "at all relevant times" the four corporate officers "actually participated in and exercised control over the affairs of one or more" of the corporate defendants. The court held that more particularity, something akin to Fed.R.Civ.P. 9(b), was required for pleading a complaint under CERCLA. 768 F.Supp. at 900. The court stated that the plaintiff's complaint failed to give fair notice of the legal theory under which the case was proceeding, and failed to "state that the individual defendants were being charged under the 'owner or operator' category of CERCLA." 768 F.Supp. at 896.

*Cash Energy* is distinguishable from the present case. CBS clearly pleaded that "[t]he Defendants were owners and operators of the Property at the time of disposal of hazardous substances thereon and are thus liable under § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2)." This paragraph gave Mrs. Henkin notice of the legal theory under which CBS was proceeding and even stated the statute that is the foundation of its claim. Thus, *Cash Energy* is not on point.

In addition, Fed.R.Civ.P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A significant number of courts have held that pleading under CERCLA is governed by Fed.R.Civ.P. 8, not Rule 9. *See United States v. Azrael*, 774 F.Supp.

376, 379 n. 6 (D.Md.1991) (rejecting *Cash Energy*); *Stilloe v. Almy Bros., Inc.*, 759 F.Supp. 95, 104 (N.D.N.Y.1991) (applying Fed.R.Civ.P. 8); *Quadion Corp. v. Mache*, 738 F.Supp. 270, 275 (N.D.Ill.1990) (although the test for liability of corporate individuals under CERCLA is heavily fact specific, federal pleading rules do not compel the specification of such facts in the complaint).

CBS's complaint satisfied both Fed.R.Civ.P. 8 and the requirements enunciated in *Cash Energy* with respect to its claim against Mrs. Henkin under CERCLA § 107(a)(2).

Mrs. Henkin is correct that CBS's allegations are insufficient in part. The allegations of paragraph 10 of the complaint are couched in the terms, "on information and belief", which the Seventh Circuit has deemed "a clearly improper locution under the current federal rules, which impose (in the amended Rule 11) a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992). That defect plagues only part of CBS's allegations against Ms. Henkin, however, so the court turns to the merits of the claim.

### IV. *Count I*

CERCLA was enacted in response to the environmental and public health hazards caused by the improper disposal of hazardous wastes. *United States v. Fleet Factors*, 901 F.2d 1550, 1553 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). The statute attempts to place the ultimate responsibility for cleaning up hazardous waste on those persons or entities responsible for problems caused by the disposal of hazardous waste. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir.1990).

To that end, § 107(a)(2) of CERCLA provides that:

[A]ny person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ...

shall be liable for ... any other necessary costs of response incurred by any other person consistent with the national contingency plan.

42 U.S.C. § 9607(a)(2). CERCLA defines the terms "owned" or "operated" as meaning any person owning or operating such facility. 42 U.S.C. § 9601(20)(A). The United States Court of Appeals for the Seventh Circuit stated that the circularity of the definition "strongly implies ... that the statutory terms have their ordinary meanings rather than usual or technical meanings." *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155, 156 (7th Cir.1988).

### A. Whether Mrs. Henkin was an "Owner"

■ Mrs. Henkin claims that she was not the owner of the property; instead, KGGC was the owner because it held title to the property. Since Mrs. Henkin was only a minority shareholder of Gemeinhardt, KGGC's corporate parent, she cannot be liable as an owner. Mrs. Henkin cites *Riverside Market Development Corp. v. International Building Products, Inc.*, 931 F.2d 327 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991), to support this argument.

In *Riverside,* the plaintiffs alleged that the defendant was liable under § 107(a)(2) as the owner of a manufacturing plant. The defendant was a corporate shareholder who held the positions of corporate secretary, consultant, and chairman of the board. He visited the plant only two to four times per year to attend the annual Christmas party, a trade association meeting, and brief meetings with executive personnel. As a corporate officer, the defendant regularly reviewed financial statements and consulted with others about the statements.

The court held that the defendant was not liable as an owner for the clean up costs of the plant. 931 F.2d at 330. Specifically, the court stated that:

Prescott's position as majority shareholder of [the corporation] did not make him an owner of the asbestos manufacturing plant. The plant was purchased by the IBP corporate entity and not by Prescott. The property of the corporation is not that of the shareholders, as owners.

*Riverside Market Development Corp. v. Int'l Building Products,* 931 F.2d at 330 (quoting, 1 C. Keating & G. O'Gradney, *Fletcher Cyclopedia of the Law of Private Corporations* § 31 at 555 (1990)); *see also Jacksonville Electric Authority v. Eppinger and Russell Co.,* 776 F.Supp. 1542, 1545 (M.D.Fla.1991).

Similarly, in *Amcast Industrial Corp. v. Detrex Corp.,* No. S88–620, 1990 U.S.Dist. LEXIS 15191 (N.D.Ind. September 12, 1990), this court faced the same issue presented by this case: the present owner of a facility attempted to hold shareholders of a former corporation on the facility liable for response costs as "owners" of the plant. The former shareholders submitted an affidavit stating that the corporation held title to the property, not the shareholders. The defendants argued that because they were merely shareholders in the corporation, they had no ownership interest in the corporation's property and could not be held liable under CERCLA.

The court agreed, stating that "[n]othing in the language of CERCLA even remotely suggests a congressional intent to abrogate the common law of corporations by subjecting shareholders to liability as the 'owners' of corporate property." *Amcast Industrial Corp. v. Detrex Corp.,* 1990 U.S.Dist. LEXIS 15191 at *8. The court continued: "[I]t is clear that the Former Shareholder Defendants ... were not the 'owners' of the 'facility' in question. [The] plant was a corporate asset, and was not property of the individual shareholders." *Id.* at *9. *See also Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 781 F.Supp. 1454, 1455 (N.D.Cal.1991) (defendant clearly not an owner under traditional principles of corporate law).

■ Under Indiana law, a corporation is an independent legal entity, separate and distinct from its shareholders. *Department of Treasury of Indiana v. Crowder,* 214 Ind. 252, 15 N.E.2d 89, 91 (1938). It is well established that a corporate offi-

cer or shareholder may not be held liable for acts by the corporation merely because he is an officer or shareholder. *Birt v. St. Mary Mercy Hospital of Gary, Inc.*, 175 Ind.App. 32, 370 N.E.2d 379, 382 (1977). Nor can shareholders be held liable for the debts of a corporation, except to the extent of any unpaid portions of their subscriptions for shares. *Manufacturing, Inc. v. Milwaukee Valve Co., Inc.*, 444 N.E.2d 855 (Ind.Ct.App.1983).

Here, KGGC, not Mrs. Henkin held title to the property. Mrs. Henkin presented this fact by affidavit and a copy of the Warranty Deed dated May 20, 1977 from KGGC to CBS. CBS admits that "there is no dispute that KGGC held title" to the property. Property of the corporation is not that of the shareholders, as owners. Based upon *Amcast Industrial Corp. v. Detrex Corp.* and *Riverside Market Development Corp. v. Int'l Building Products*, KGGC, and not Mrs. Henkin, was the "owner" of the property.

CBS argues that because Mrs. Henkin owned a large minority of shares in Gemeinhardt, and she may have profited from such holdings, she was an owner within the meaning of CERCLA. Alternatively, CBS contends that the court should pierce Gemeinhardt's veil and hold Mrs. Henkin liable. CBS cites several cases to support its proposition that Mrs. Henkin, as a shareholder and officer, was an "owner". These cases, however, did not hold the individual shareholders or officers liable because they were owners; instead, the individuals were found liable as "operators" because they personally participated in the disposal of the hazardous waste. *See State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2nd Cir.1985) (with respect to liability of the individual officer and stockholder, the court stated explicitly, we hold defendant liable as an "operator" under CERCLA).

In *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), the court held a shareholder and officer liable under CERCLA § 107(a)(3) because

he personally arranged for the disposal of hazardous substances. The court, however, stated clearly that the defendant was liable because he personally participated in conduct that violated CERCLA, not because he was a shareholder or officer:

> Here, [the defendant] is liable because he personally participated in the wrongful conduct and not because he is one of the owners of what may have been a less than bona fide corporation.

> \*     \*     \*     \*     \*     \*

> Liability was not premised solely upon [the defendant's] status as a corporate officer or employee. Rather, [the defendant] is individually liable under CERCLA ... because he personally arranged for transportation and disposal of hazardous substances....

*United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d at 744. *See also Columbia River Service Corp v. Gilman*, 751 F.Supp. 1448, 1454 (W.D.Wash.1990) (potential liability as an owner/operator rests upon a basis independent from that of the corporation).

Further, CBS has presented no facts that warrant piercing not only KGGC's veil to hold Gemeinhardt liable, but also piercing Gemeinhardt's veil to hold Mrs. Henkin liable as the "owner" of the property. Since there is no dispute that KGGC held title to the property, the court finds that Mrs. Henkin is not liable under CERCLA as the "owner" of the property.

**B. Whether Mrs. Henkin was an "Operator"**

Courts will impose liability under CERCLA upon an officer or shareholder if that person: (1) actually participated in the facility's operations; or (2) actually exercised control over, or was otherwise intimately involved in the operations of, the corporation immediately responsible for the operation of the facility. *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 781 F.Supp. 1454, 1456–57 (N.D.Cal.1991); *see also* R. Aronovsky and L. Fuller, *Liability of Parent Corporations for Hazardous Substance Releases under CERCLA*, 24 U.S.F.L.Rev. 421, 442 (1990).

Mrs. Henkin contends that she is not liable as an "operator" because she did not personally participate in the operations of either Gemeinhardt or KGGC on the property. She again cites *Riverside Market Development Corp. v. Int'l Building Products, Inc.* to support her argument.

In *Riverside*, 931 F.2d 327, the court recognized that corporate shareholders or officers could be held liable under CERCLA as operators if "they themselves actually participate in the wrongful conduct prohibited by the act." 931 F.2d at 330. A court must look to "the extent of the defendant's personal participation in the alleged wrongful conduct." *Id.* The court then held that the defendant was not liable because there was no evidence that he personally participated in any conduct that violated CERCLA. *Id.* The court noted that the defendant spent very little time at the plant, he did not personally participate in the improper disposal of hazardous substances, and his participation in plant operations was limited to reviewing financial statements and attending meetings. *Id.*

*Riverside Market Development Corp. v. Int'l Building Products* is in accord with the clear majority of cases that require some level of personal involvement before liability accrues. *See, e.g., United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d at 744 (holding officer liable because he had direct supervision over disposal of hazardous waste); *Conductron Corp. v. Williams*, 785 F.Supp. 271, 274 (D.N.H.1991) (genuine issue of fact whether officer was in control of disposal); *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 781 F.Supp. at 1458 (defendant not liable because there was no evidence that he ever exercised control over the affairs of the company that operated the facility or was intimately involved in those companies operations); *Commonwealth of Massachusetts v. Blackstone Valley Elec. Co.*, 777 F.Supp. 1036, 1039 (D.Mass.1991) (officer must have personally participated in the conduct that violated CERCLA to be liable); *United States v. Consolidated Rail Corp.*, 729 F.Supp. 1461 (D.Del.1990) (CERCLA liability requires that a person be actively partic-

ipating in the management of the facility); *United States v. Mottolo*, 695 F.Supp. 615 (D.N.H.1988) (sole shareholder of company liable since he had personally driven truckloads of waste to the site).

Mrs. Henkin did not personally participate in any manner regarding the production or disposal of waste at the property. She presented three affidavits which affirm that she was never involved in any aspect of the business of Gemeinhardt or KGGC; she never attended a single meeting of shareholders, officers, or directors of Gemeinhardt or KGGC, and did not have any responsibility with either corporation; she never saw any financial statements of either corporation; she never had an office at KGGC's plant and never visited the plant except for social reasons; and she was not involved in the May 1970 purchase of KGGC stock.

Further, she had no involvement in the May 1977 sale of assets to CBS and knew nothing about the manufacturing process. Most importantly, Mrs. Henkin knew nothing about the wastes that were generated in that process or the manner in which such wastes were disposed, and she never personally disposed of or authorized the disposal of any substance at or in the vicinity of the plant.

■ CBS argues that Mrs. Henkin's personal knowledge of KGGC's disposal of hazardous wastes is not a prerequisite to CERCLA liability. To hold otherwise, CBS contends, "would allow the oblivious operator to escape liability while the conscientious operator has liability imposed because he or she knew too much." The operative word in CBS's argument is "operator". Had Mrs. Henkin been personally involved in the waste disposal operations of either Gemeinhardt or KGGC, she could be held liable as an operator notwithstanding her lack of knowledge of a CERCLA violation. Whether a shareholder or officer is a conscientious or oblivious "operator" regarding waste disposal is not the correct inquiry; the issue is whether the shareholder or officer personally participated in some

fashion in the disposal of the waste. Mrs. Henkin did not.

CBS also argues that since Mrs. Henkin owned 37% of Gemeinhardt's stock (presumably combined with her husband's 56% holding), she had authority to abate the waste disposal. Her failure to do so, CBS contends, results in her liability. The court disagrees.

■ In *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir. 1992), two defendants were shareholders and directors of a corporate defendant, as well as being the sons of the president and majority shareholder of the defendant corporation. The court held that these two defendants were not liable under CERCLA because they were not "operators". 966 F.2d at 844. Specifically, the court stated:

> Even if we assume that a corporate officer may be held personally liable as an operator, ... we agree with the district court that the [defendants] lacked the requisite authority to control the USTs or to prevent the disposal of hazardous waste at the site. It is true that the [defendants] were vice presidents of the Hooper Co. beginning in the early 1960's. Any authority they possessed was entirely subordinate to their father, however, who as president and majority stockholder exercised ultimate authority over the finishing plant.... [The plaintiff] has failed to direct our attention to any evidence that would undermine the district court's conclusion that 'James Hooper, Sr., as president during the relevant times, retained all decision-making authority over the company including the daily operations at the finishing plant,' and that the [defendants] should accordingly not face CERCLA liability.

*Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d at 844. Thus, mere stock ownership, even in conjunction with a family member, does not trigger CERCLA liability. CBS has presented no evidence establishing that Mrs. Henkin personally participated in the disposal of waste at the property.

■ Even if that Mrs. Henkin could be deemed to have constructively owned over 90% of the Gemeinhardt stock, this fact alone does not establish CERCLA liability. Although such a major stockholder presumably has the authority to control the actions of the corporation in which she owns stock, courts still require that the stockholder actually participate in the activities of the corporation.

■ For example, in *United States v. Kayser–Roth Corp.*, 910 F.2d 24, 27 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991), the court held that a parent corporation could be held liable as an operator of a wholly-owned subsidiary that violated CERCLA. For the parent corporation to be held an "operator", however, requires more than complete ownership and the concomitant general authority or ability to control that comes with ownership. 910 F.2d at 17. At a minimum, it requires active involvement in the activities of the subsidiary. *Id.* See also *Jacksonville Electric Authority v. Eppinger and Russell Co.*, 776 F.Supp. 1542, 1546–47 (M.D.Fla.1991); *Mobay Corp. v. Allied–Signal, Inc.*, 761 F.Supp. 345 (D.N.J.1991).

To hold Mrs. Henkin liable as an "operator" under any of the above theories, the court would have to find that Mrs. Henkin was actually involved in the operations of Gemeinhardt or KGGC or that she was actually involved in the disposal of waste on the property. That she owned stock is not determinative; she must have participated in some manner concerning the disposal of waste on the property. Besides Mrs. Henkin's ownership of 37% of Gemeinhardt's stock, no facts suggest that Mrs. Henkin was actively involved in the activities of Gemeinhardt or KGGC. The undisputed facts indicate that Mrs. Henkin was not involved in any way with Gemeinhardt or KGGC or with the disposal of waste. Thus, Mrs. Henkin is not liable as an "operator".

Summary judgment should be granted Mrs. Henkin on Count I of CBS's complaint.

### V. *Count II*

CBS also alleges that Mrs. Henkin is liable for contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f), which provides, in part, that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title." To be liable under CERCLA § 113(f), a person first must be liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a). Because Mrs. Henkin is not liable under CERCLA § 107(a) as either an "owner" or "operator", she is not liable for contribution to CBS under CERCLA § 113(f).

Summary judgment should be granted Mrs. Henkin on Count II of CBS's complaint.

### VI. *Count V*

Count V of CBS's complaint alleges that Mrs. Henkin negligently disposed of, or authorized the disposal of, hazardous waste. Mrs. Henkin claims that she cannot be held liable because she did not personally commit the torts alleged by CBS. CBS contends that Mrs. Henkin's status as a corporate director, coupled with her failure to attend Gemeinhardt's directors' meetings and failure to pay attention to Gemeinhardt's affairs, constitutes negligence.

The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he or she specifically directed the particular act to be done, or participated, or cooperated therein.

The ordinary doctrine is that a director, merely by reason of the office, is not personally liable for the torts of the corporation; he or she must be shown to have personally voted for or otherwise participated in them.

3A S. Flanigan and C. Keating, *Fletcher Cyclopedia of the Law of Corporations,* § 1137 at 275 (1986 revised permanent edition) (citing cases).

Indiana courts, in agreement with this principle, have held that a corporate officer is not personally liable for the torts of the corporation, or for the acts of other agents, officers, or employees of the corporation, merely because of his office; some additional connection with the tort is required. *Roake v. Christensen,* 528 N.E.2d 789, 791–92 (Ind.Ct.App.1988); *Bowling v. Holdeman,* 413 N.E.2d 1010, 1014 (Ind.Ct. App.1980) (that defendant was president of the corporation and owned 75% of its stock, in and of itself, forms no basis for tort liability); *Birt v. St. Mary Mercy Hospital of Gary, Inc.,* 370 N.E.2d at 382.

Mrs. Henkin cannot be held liable for the torts of Gemeinhardt or its other officers, employees, or agents merely because she was a director; some additional connection is required. As stated above, however, she had no connection with the corporation's affairs, and more specifically with the corporation's disposal of the hazardous waste, except as a director of Gemeinhardt. She did not personally participate in any manner regarding the production or disposal of waste at the property; she knew nothing about how the hazardous wastes were generated nor the manner in which such wastes were disposed. Further, she never personally disposed of or authorized the disposal of any substance at or in the vicinity of the plant.

The cases that CBS cites, *Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.2d 264 (2nd Cir.1986), and *Robinson v. Watts Detective Agency,* 685 F.2d 729 (1st Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983), are not applicable. Both cases concern a director's fiduciary liability to his or her own corporation or shareholders, not a director's tort liability to a third party.

Because the court finds that Mrs. Henkin was not negligent, the court need not address the issue of whether the statute of limitations had run when CBS filed the instant suit.

Summary judgment should be granted Mrs. Henkin on Count V of CBS's complaint.

### VII. *Count VI*

In Count VI of its complaint, CBS seeks recovery from Mrs. Henkin under a theory of contribution. CBS contends that the EPA consent order expressly reserved CBS's right to seek contribution from liable persons, and alleges specifically that Mrs. Henkin is liable with it under CERCLA § 107(a), under IND.CODE 13–1–3–8,[1] and for negligence.

Mrs. Henkin argues that she is not liable to CBS for contribution because she has no underlying liability to the EPA or IDEM. Thus, she concludes that she cannot have "joint" liability with CBS. The court agrees.

Under the terms of the consent order, CBS has the right to seek contribution under the statutory framework of CERCLA, *see,* 42 U.S.C. § 9613(f), or possibly under state law. *See United States v. Hooker Chemicals and Plastic Corp.,* 739 F.Supp. 125, 129 (W.D.N.Y.1990) (a party liable for CERCLA response costs is not barred from pursuing contribution for those costs under state law); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 658 (N.D.Ill.), *aff'd,* 861 F.2d 155 (7th Cir. 1988) (CERCLA does not bar an action available under state law for contribution for costs incurred).

As stated above (Count II), however, Mrs. Henkin is not liable to CBS for contribution under CERCLA because she was neither an "owner" or "operator". Further, she is not liable to CBS for negligence because she did not personally participate in or authorize the disposal of waste on the property. For the same reasons, Mrs. Henkin is not liable under IND.CODE 13–1–3–8. Thus, because Mrs. Henkin has no underlying liability, she cannot be held jointly liable with CBS.

Further, the EPA consent order cannot confer upon CBS the right to contribution under state law where that law clearly expresses that there is no right of contribution between joint tortfeasors. *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. at 658 (a party may seek contribution to the extent state law provides a remedy). Indiana law states conclusively that there is no right of contribution among tortfeasors. IND. CODE 34–4–33–7; *Elcona Homes Corp. v. McMillan Bloedell, Ltd.,* 475 N.E.2d 713 (Ind.Ct.App.1985); *Gomez v. Adams,* 462 N.E.2d 212 (Ind.Ct.App.1984). The consent decree between the EPA and CBS did not eviscerate this rule. CBS is not entitled to contribution under Indiana law from Mrs. Henkin as a joint tortfeasor notwithstanding CBS's consent decree with the EPA.

Summary judgment should be granted Mrs. Henkin on Count VI of CBS's complaint.

### VIII. *Conclusion*

For the foregoing reasons, the court:

(1) DENIES CBS's motion for continuance under Fed.R.Civ.P. 56(f); and

(2) GRANTS defendant Mary Henkin's motion for summary judgment as to Counts I, II, V, and VI of the plaintiff's complaint.

SO ORDERED.

---

1. IND.CODE 13–1–3–8 provides, in part, that: It is unlawful for any person to throw, run, drain, or otherwise dispose into any of the streams or waters of this state, or to cause, permit, or suffer to be thrown, run, drained, allowed to seep or otherwise disposed into any waters, any ... matter that shall cause or contribute to a polluted condition of any waters....